UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROOSEVELT THOMAS ARDISON #386262 | CIVIL ACTION NO. 18-cv-636 SEC P |
| VERSUS | CHIEF JUDGE HICKS |
| CADDO-SHREVEPORT STREET LEVEL INTERDICTION UNIT, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Roosevelt Thomas Ardison ("Plaintiff"), who is self-represented, was arrested on drug and firearm charges.[1] He alleged in his complaint that police violated his Fourth Amendment rights, forged a statement by him, and subjected him to excessive force. The court previously dismissed Plaintiff's claims that were based on the Fourth Amendment and habeas issues. The only remaining claim is for excessive force. Docs. 13 & 16.

The court ordered service on the two individual defendants, Caddo Parish Sheriff's Deputy John Witham and Shreveport Police Officer Donald Belanger, Jr., and directed them to respond to the excessive force claim. Doc. 12. The defendants filed answers, and the court issued a scheduling order that allowed a reasonable time for discovery and the filing of dispositive motions. Doc. 23. Before the court are motions for summary judgment (Docs. 26 & 27) filed by Witham and Belanger. The motions were noticed for briefing,

---

[1] Plaintiff went to trial and was convicted by a unanimous verdict of possession of a firearm by a convicted felon and by a nonunanimous verdict of possession with intent to distribute cocaine. After Ramos issued, his case was remanded for reconsideration with respect to the nonunanimous drug conviction. State v. Ardison, 314 So.3d 1158 (La. App. 2d Cir. 2021).

but Plaintiff did not file any response. For the reasons that follow, it is recommended that the motions be granted and this case be dismissed.

**Plaintiff's Allegations**

Plaintiff alleged in his original complaint that he was standing in a driveway on private property when Agents Belanger and Witham wrongfully arrested him. His only allegation with respect to excessive force was that he sought compensation for being "beat and choke in front of society and my child."

Plaintiff later filed an amended complaint (Doc. 6) that added some detail. He alleged that the officers ordered him to step toward them, and an officer then placed his hands on Plaintiff and searched him. Plaintiff alleged that he was then "choked and slammed to the ground and once upon the ground the plaintiff hand was forcefully smashed into ground repeatedly." Plaintiff also alleged that he was "beaten unconscious by agents repeatedly beating his head into the ground" and that he was "tased unnecessarily."

**Summary Judgment**

Defendants challenge Plaintiff's allegations in their motions for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Defendants' Evidence**

Agent Belanger testifies in an affidavit that he was assigned to the Caddo-Shreveport Street Level Interdiction Unit and, at the time of this incident, was participating in a city-wide operation to target street level narcotics distributors and to check documented locations where there were complaints of drugs or where previous arrests had been made. The address on Oakdale Street where Plaintiff was arrested was a well-known trap house, which is a location where dealers sell drugs that is separate from their personal residence. Belanger testified that he had personally been involved in numerous prior arrests at the location. Agent Witham added in his declaration (made in accordance with 28 U.S.C. § 1746) that he had also made multiple arrests and seized drugs and weapons at the location. Witham stated that the residence was not occupied but was used for drug activity.

Agent Belanger testified that at about 6:30 p.m. on June 8, 2017 he and Agent Witham saw three males in the driveway of the trap house. The agents, who were wearing vests that clearly read "POLICE" on the front and back, approached the men. One of them, later identified as Plaintiff, began to walk away. The agents asked Plaintiff to step back

towards them, and he responded by changing direction and blading his body away from the officers.

Agent Belanger testified that he placed his hand on Plaintiff's back, told him to relax, and informed him that he needed to be searched for weapons for officer safety. As the pat down began, Plaintiff "suddenly and violently attempted to pull away," so Belanger "pinioned [Plaintiff's] arms to prevent him from drawing a possible weapon." As Plaintiff attempted to pull away, his shirt was pulled up, and Agent Witham saw a handgun tucked into Plaintiff's waistband. Witham announced "gun," and was able to retrieve a loaded 9mm handgun from Plaintiff's waistband.

Agent Belanger testified that Plaintiff thrashed about during this process. He continued to resist after the gun was secured, so Belanger "placed him in a modified headlock and brought him to the ground." As he brought Plaintiff to the ground, Belanger saw Plaintiff produce a black sock and throw it on the driveway. It was later determined that the sock contained a pill bottle that held a small amount of crack that was packaged for sale in individual baggies.

Agent Belanger testified that Plaintiff continued to resist after he was on the ground, despite verbal commands to stop resisting. Belanger was eventually able to move Plaintiff's hands behind his back and apply handcuffs. He then stood Plaintiff up and advised him of his <u>Miranda</u> rights. Belanger stated that at no time during the encounter was Plaintiff's head struck against the ground, Plaintiff never lost consciousness, and a Taser was not deployed by either officer. Plaintiff admitted to the ownership of the

handgun and that he was a convicted felon, but he claimed that he was holding the drugs for someone else.

Agent Witham's statement is consistent with Agent Belanger's affidavit. He also stated that neither officer used a Taser, and he stated that he did not use any physical force other than perhaps grabbing Plaintiff's arm to assist Agent Belanger in handcuffing Plaintiff.

**Analysis**

Defendants argue that their actions did not violate the constitution and, alternatively, they are entitled to qualified immunity. When a person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances. Graham v. Connor, 109 S.Ct. 1865 (1989). To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Defendants met their summary judgment burden by producing evidence that squarely conflicts with the allegations in the complaint. The burden then shifted to Plaintiff to point to or submit competent evidence that would create a genuine dispute of material fact. Plaintiff did not submit anything. The only competent summary judgment evidence in the record comes from Defendants, so it is that evidence that will control for purposes of resolving the motion.

The Defendants' evidence shows that the arresting officers used force that was objectively reasonable in light of the facts and circumstances. Plaintiff offered some resistance to being searched, which revealed a gun, and he further actively resisted being arrested. He was subjected to a headlock and take down, which promptly resulted in him being handcuffed. There is no evidence that any part of his body was smashed into the ground or that a Taser was used, as Plaintiff alleged in his complaint. Considering the overall circumstances, including the presence of a firearm in a known drug trafficking area, the moderate amount of force depicted by the evidence was not excessive and did not violate the Fourth Amendment.

A recent Fifth Circuit decision also supports summary judgment for the officers. In Buehler v. Dear, __ F. 4th __, 2022 WL 619584, *10 (5th Cir. 2022), an unarmed misdemeanor arrestee stepped back as if to avoid being arrested, and officers took him to the ground for 40 to 45 seconds and handcuffed him. The arrestee suffered minor bruises and abrasions not serious enough to appear in photos. The Fifth Circuit noted, "We have frequently held that officers were either constitutionally justified or entitled to qualified immunity for taking suspects to the ground in response to forms of physical

resistance similar to those in which Buehler engaged." Id. at *10. The court also reviewed decisions from other circuits and found, "In case after case, courts upheld officers' use of takedowns to gain control of suspects who had disregarded lawful police orders or mildly resisted arrest, even when arrestees were suspected of minor offenses and the force employed appeared greater than necessary in retrospect—at least when officers' tactics caused arrestees only minimal injuries." Id. at 11. The district court's denial of the officer's motion for summary judgment was reversed. The Buehler decision supports summary judgment for Witham and Belanger on the merits of a Fourth Amendment claim and based on qualified immunity.

**Caddo-Shreveport Street Level Interdiction Unit**

Plaintiff also named as a defendant the Caddo-Shreveport Street Level Interdiction Unit. Courts routinely hold that a "police department" is not a legal entity that can be sued. Ellis v. Nixon, 2021 WL 5310907 (W.D. La. 2021) (collecting cases). Courts have similarly held that a drug task force is not an entity that can be sued in its own name. See, e.g., Armstrong v. Sheriff's Office Morehouse Parish, 2020 WL 7700608, *6 (W.D. La. 2020) and Casson v. Powell, 2019 WL 2166660 (W.D. La. 2019) (collecting cases). All claims against the interdiction unit should, therefore, be dismissed on the grounds that is lacks the capacity to be sued in its own name.

Accordingly,

It is recommended that Defendants' Motions for Summary Judgment (Docs. 26 & 27) be granted and that all remaining claims against Donald Belanger, Jr. and John Witham be dismissed with prejudice. It is further recommended that all claims against the Caddo-

Shreveport Street Level Interdiction Unit be dismissed sua sponte on the grounds that it is not a legal entity with the capacity to be sued.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of March, 2022.

Mark L. Hornsby
U.S. Magistrate Judge